## GRAY AND WIFE *v.* BAIRD AND MARCHBANKS.

HOMESTEAD. *Purchase Money. Failure of officer to lay off homestead.* Gray borrowed from Hall an amount of money to pay for a tract of land which he bought under a decree of the County Court, giving him therefor his notes, retaining on the face of them a lien on the land. Being also indebted to one Kennedy, the latter obtained a judgment against Gray before a Justice of the Peace, and ultimately the land was sold under said judgment. In the meantime, Hall sued Gray upon his notes, and obtained judgment, which was stayed by Marchbanks. At the expiration of the stay, the land of Marchbanks, the stayor, was sold to satisfy the judgment against Gray, and subsequently Marchbanks, having taken a judgment over against Gray, his principal, redeemed from Kennedy, adding thereto the amount of his own judgment. Gray had no other land besides the tract on which he lived, and which had thus been sold. *Held:* 1. The giving of the notes for money borrowed to pay for a tract of land, although the notes recited a lien upon the land, does not make the money purchase money for the land. It is a species of security, but not such as to create a vendor's lien. 2. Gray and wife having a homestead right in the land originally sold to satisfy Kennedy's judgment, and redeemed by Marchbanks, as creditor by reason of having paid the judgment which he had stayed, the purchaser, as well as the creditor who redeems, takes the land subject to the homestead right of the debtor. The mere fact that the officer, in selling the land, failed to assign the homestead, does not deprive the debtor of the right, nor vest a greater right than the officer could sell in the purchaser.

FROM MARSHALL.

Appeal from the Chancery Court at Lewisburg, W. S. FLEMING, Ch.

Gray *v.* Baird.

LEWIS BROS. and J. S. WILKES for Complainants.

R. WARNER for Defendants.

FREEMAN, J., delivered the opinion of the Court.

Gray, in 1873, was owner of a tract of land of 100 acres. Kennedy got a judgment against Gray, before a Justice of the Peace of Marshall county, for $338.38, on which an execution was issued June, 1874, and levied on this tract of land, returned to October term of the Circuit Court, and the land condemned for sale, which was done, Kennedy becoming the purchaser, bidding his debt and costs. In the meantime, two judgments in favor of Hall had been rendered against Gray, in 1874, for $420.00 each, with ten per cent. interest. Marchbanks stayed these judgments for Gray, and when executions issued they were levied on Marchbanks' lands —his home—and it was sold and the debt thus paid, amounting to near $1,000. He thereupon took judgment over by motion against Gray, and redeemed the land from Kennedy, advancing the amount of his judgments on the land, besides paying Kennedy's debt. Marchbanks being in possession, this bill is filed by Gray and wife to assert the right to homestead under our law.

The bill goes on the ground that possession was not voluntarily given of the land to Marchbanks, but was obtained by fraud and coercion. This is denied in the answer.

The fact is, that when the time of redemption was about out, Marchbanks, having been compelled to give up his own, wished possession of this land, unless it was redeemed. Gray seems to have tried to borrow the money to redeem the land, but failed to get it. He probably promised Marchbanks if he could not redeem he would yield possession to him when the time expired. When he failed to redeem, Marchbanks urged his claim to possession. Gray then insisted on his right to hold his homestead, whereupon Marchbanks commenced his action of ejectment, upon which Gray sent for him and told him he should have possession, and soon after Marchbanks was allowed to move in, and Gray moved off, probably renting another place. He is not alleged or shown to have obtained any other homestead, and we are satisfied has not done so.

On this aspect of the case, the question is: What are the rights of the parties? The homestead right did not pass to Kennedy under his purchase, for by the Constitution, Art. V., sec. 11, as well as the Code, sec. 2114a, Act of 1870, the homestead in possession of the head of a family, to the value of $1,000, is exempt from sale under legal process during the life of such head of the family, and goes to the widow and children during their minority occupying the same. "Nor shall said property," says the Constitution, "be alienated without the joint consent of the wife when that relation exists"

It is true sec. 2116 provides that the officer who levies an execution or attachment shall lay off the homestead, and gives the mode of doing so, but this duty being imposed upon the officer, if he fails (as appears to have been in this case) to perform that duty, it certainly could not be held that the sale passed the right which the Constitution provided should be exempt from such sale. It would simply pass the title, subject to this right, but could not defeat it. This being so, what was the position of Marchbanks when he redeemed the land from Kennedy? He did so by virtue of secs. 2128-9 of our Code, authorizing a *bona fide* creditor—that is a judgment creditor—to redeem from a purchaser by paying his bid and making the advance therein required. In this case he has advanced the full amount of his judgment, and holds the land under sec. 2129, as if he had been the original purchaser. If he is held to take the shoes of the original purchaser, at the advanced price, it seems clear that he only takes what that purchaser bought, and holds that and nothing more by virtue of his redemption, charged, however, with the amount of his own debt, whether he has advanced part or the whole of such debt. To hold otherwise would be to enable him, by redeeming, to get more than the officer had sold or the purchaser had bought. If this be correct, it would seem to follow that Marchbanks, by his redemption, obtained no right to the homestead, and could claim none, whatever might be the

rights of a party enforcing a vendor's lien, or a claim for the purchase money in any form, it might be sought to be enforced. Be this as it may however, the Court is of the opinion that the debt stayed by Marchbanks was not the purchase money for the land. The land had been bought by Gray under a decree of the County Court. He had paid for it. Hall had advanced or loaned him the money to pay for the land, and had taken his notes, retaining a lien on the face of them on his land. These notes were the basis of the judgment stayed by Marchbanks. This could in no sense be held to be the purchase money of the land. That had been paid by Gray. This was a debt for borrowed money, advanced or loaned, it is true, to pay for the land, but still but a debt for loaned money. The lien on the face of the note did not make it such. That was a form of security carried out by the parties themselves, but is not a vendor's lien, but one by contract.

The using borrowed money to pay for land does not give the lender the right even to be subrogated to the vendor's lien, much less does the note given for such money give such lien, as held by this Court, in *Durant* v. *Davis*, 10 Heis., 522. It was also held by this Court that when a vendor conveyed the land, and then took a deed of trust to secure the purchase money notes, and the vendee died before the enforcement of the trust, the widow was entitled to dower, giving, among

Gray *v.* Baird.

other reasons, that the vendor had chosen the form of his security, and the one chosen made the land subject to the wife's dower.

This being so, Marchbanks cannot claim to be subrogated to a vendor's lien by having paid the judgments stayed by him. The notes themselves were not entitled to such lien, and as a matter of course paying them cannot give such a right.

The result is, the decree of the Chancellor is affirmed, with costs.